**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LAWRENCE H. KNIGHT, II,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **CIVIL NO. 3:CV-10-2168** |
| **v.** | : | |
| | : | **(Judge Caputo)** |
| **CO LOWRY, *et al.*,** | : | |
| | : | |
| **Defendants** | : | |

**M E M O R A N D U M**

## I.    Introduction

Plaintiff, Lawrence Knight, is a state prisoner proceeding *pro se* with this civil rights action pursuant to 42 U.S.C. § 1983.  This case is currently proceeding on a supplemented complaint.  Doc. 1, Compl. and Doc. 11, Supplement.  Mr. Knight avers that he was assaulted by Corrections Officer (CO) Black, CO Lowry, CO Sam Herchik, and other unidentified officers on December 29, 2008, while housed at the State Correctional Institution at Waymart (SCI-Waymart), in Waymart, Pennsylvania.  He further alleges that some officers failed to protect him from harm by other officers, and all were deliberately indifferent to his medical needs following the assault.  Superintendent of SCI-Waymart, Joseph Nish is also named as a defendant.  Mr. Knight, who suffers from a serious heart condition, asserts that he continues to suffer from various physical and psychiatric medical problems following the assault including, but not limited to, a broken neck, numbness in his arms and post-traumatic stress.  Docs. 1 and 11.

Pending before the Court is defendants' motion to dismiss (Doc. 22) based on the Eleventh Amendment, Mr. Knight's failure to allege the personal involvement of Superintendent Nish, and Plaintiff's failure to exhaust his administrative remedies with respect to the various assaults and denial of medical care.  Mr. Knight filed an opposition brief (Doc. 31).[1]  Defendants have not filed a reply brief.  Based on the discussion set forth below, the motion will be granted in part and denied in part.

Also pending is Mr. Knight's Motion for Extension of Time to File Residence of Defendants (doc. 28).  That motion is ripe and will also be considered.

## II.   Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  On a motion to dismiss, "[w]e 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  Byers v. Intuit, Inc., 600 F.3d 286, 291 (3d Cir. 2010) (quoted case omitted).  In general, when ruling on a motion to dismiss pursuant to 12(b)(6), a court may only consider documents that are attached to or submitted with the Complaint, and matters of public record.  Pryor v. Nat'l Collegiate Athletic Ass'n, 288

---

[1]  Although labeled as a "Rebuttle (sic) Brief," by Mr. Knight, there is no doubt that his filing is meant to be his brief in opposition to the Defendants' motion to dismiss.  See Doc. 32.  Therefore, it will be deemed as such.  We note that although filed untimely, and without receiving an enlargement of time to file his brief out of time, the Court will accept Mr. Knight's pro se opposition brief (doc. 32) as timely filed.

F.3d 548, 560 (3d Cir. 2002).  However, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor,* 288 F.3d at 560 (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted).

In resolving a motion to dismiss pursuant to Rule 12(b)(6), a district court's "inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011)(citing *Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S.Ct. 1937, 1947-50, 173 L.Ed.2d 868 (2009)).

To survive a motion to dismiss, a complaint must allege sufficient facts, if accepted as true, that state "a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).  "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal,* 556 U.S. at ___, 129 S.Ct. at 1949.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Id*. at ___, 129 S.Ct. at 1949. The court is " 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Id. at* ___, 129 S.Ct. at 1950 (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965); *see also PA Prison Soc. v. Cortes*, 622 F.3d 215, 233 (3d Cir. 2010). Even though *pro se* complaints must be liberally construed and Fed. R. Civ. P. Rule 8 provides that a complaint need only contain "a short and plain statement of the claim," a plaintiff is required to set forth "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at ___, 129 S.Ct. at 1949. If a party opposing a motion to dismiss does not "nudge [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974.

Finally, *pro se* pleadings are held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009). However, under no circumstance is a court required to accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n. 8 (3d Cir. 1997). *Pro se* litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile. *See Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 252 (3d Cir. 2007). However, a complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to

-4-

recover is properly dismissed without leave to amend.  *Grayson v. Mayview State Hospital*, 293 F.3d 103, 106 (3d Cir. 2002).

## III.   Allegations in the Complaint

### A.   Excessive Use of Force and Denial of Medical Care Claims.

On December 29, 2008, Mr. Knight was sitting in the day room at SCI-Waymart,when another inmate commented to him about "taking back a walkman radio that plaintiff was given permission to use by the owner."  Doc. 11, Supplement to the Compl. at CM/ECF p. 4.[2]  Mr. Knight replied that he "should have broken [the other inmate's] jaw the day before."  *Id*.  Overhearing this comment, CO Lowry ordered Plaintiff to a quiet room.  *Id*.  Upon complying with this order, Mr. Knight was pat searched by CO Lowry.  *Id*.  Plaintiff told CO Lowry that "he had a conflict with him" as he had filed a grievance against him the day before for acting inappropriately with a mentally retarded inmate.  *Id*.  In response to this statement, CO Lowry allegedly slammed Mr. Knight to the floor and sat on top of him.  *Id*.  CO Herchik and CO Black responded to the scene.  *Id*.  CO Herchik placed his knee on Plaintiff's right hand while CO Black placed his knee into the palm of Plaintiff's left hand.  *Id*.  An unidentified officer crossed Plaintiff's legs and sat on them.  *Id*.  Another unidentified officer arrived on the scene and asked, "is this the one who likes little boys."  *Id*.  CO Herchik responded "No, little girls."  *Id*.  Unknown officers

---

[2]  Unless otherwise noted, all citations to the record reflect the docket number and page number assigned by the electronic case filing system (CM/ECF) rather than the page numbers of the original documents.

then punched Mr. Knight in the left eye, broke his neck, repeatedly punched him in the side of his head, and stuffed a towel into his mouth cutting off his oxygen.  *Id*. at CM/ECF p. 5.  CO Herchik warned the unidentified officer that Plaintiff had a bad heart.  *Id*.  The unidentified officer then proceeded to punch Plaintiff directly above his heart "trying to dislodge [his] five stents".  *Id*.

Mr. Knight was then placed in waist restraints and strapped to a soft back board and taken to an elevator.  *Id*.  Plaintiff alleges that during transport, the defendants deliberately dropped him on his face and head causing him further injuries.  *Id*.  While in the elevator, one of the unidentified defendants began kicking Plaintiff's feet.  *Id*.  He was then taken to another quiet room and placed in four point restraints.  *Id*.  Eventually, the block counselor and "another lady" came to see Mr. Knight and advised him to calm down and stop crying.  *Id*.  A physician then entered the room, never examined Plaintiff, but said he was "okay".  *Id*.  The doctor ignored his complaints of a broken neck and claims that he was experiencing another heart attack.  *Id*.

Plaintiff was held in four point restraints in the quiet room for two hours until an unidentified Sergeant removed the restraints and moved Plaintiff to quiet room on different block.  *Id*. at CM/ECF p. 6.  An CO named "Jimmy" entered the quiet room and commenced hitting him in the head while another unknown officer pinned him to the floor.  *Id*.  When the unidentified Sergeant came back to the block, Mr. Knight advised him of the most recent assault by CO Jimmy.  *Id*.  The Sergeant then ordered CO Jimmy off of the unit "so there would be no further problems."  *Id*.

Although Mr. Knight told the Sergeant of his injuries, he was not rendered any medical treatment.  *Id*.

A few days later Mr. Knight was "recommitted involuntarily" to SCI-Waymart's forensic mental health treatment facility.  *Id*.  About a week later, he was transferred to SCI-Rockview's Mental Health Unit (MHU).[3]  Once there he advised SCI-Rockview staff of the assaults that took place at SCI-Waymart as well as his untreated medical ailments, including his broken neck.  *Id*.  During his 30 day stay at SCI-Rockview, Mr. Knight was refused medical treatment for his injuries.  *Id*. at CM/ECF pp. 6-7.

Mr. Knight was later transferred to SCI-Greensburg, in Greensburg, Pennsylvania.  *Id*. at CM/ECF p. 7.  Plaintiff immediately told SCI-Greensburg staff of the violent December assaults at SCI-Waymart and sought medical treatment for his ongoing complaints of continuous pain due to his broken neck, migraines, and numbness in his fingers.  His complaints were ignored for three to four days but eventually staff took x-rays of his neck but failed to provide him with any medical care at that time because his "broken neck began to heal".  *Id*.

Mr. Knight claims he continues to suffer from permanent nerve damage as a result of the assaults and the denial of medical care.  *Id*.  His ongoing injuries include neck pain, migraines and numbness in both arms.  He seeks monetary damages as well as additional diagnostic testing of his neck and perceived nerve injuries.  *Id*.

---

[3]  SCI-Rockview is located in Bellefonte, Pennsylvania.  A MHU is a small licensed inpatient mental health unit that licensed by the Department of Public Welfare.

**B.     Exhaustion of Administrative Remedies (as alleged by Plaintiff)**

Mr. Knight states he filed a grievance the day before he was assaulted.  Doc. 11, Suppl..  Plaintiff alleges he filed a grievance related to the December 29, 2008, assaults before he was transferred to SCI-Rockview's MHU.  *Id.* at CM/ECF pp. 7-8. He avers SCI-Waymart officials never responded to this grievance.  *Id.* at CM/ECF p. 8.  Plaintiff states he also filed a grievance about the December 29, 2008, assaults while housed at SCI-Rockview.  *Id.*  However, he was advised by SCI-Rockview officials that  "they had no authority in the matter."  *Id.*  Mr. Knight also states that "on or about 1-7-09 [he] filed a grievance" regarding the actions complained of in his Complaint.  Doc. 1, Compl. at CM/ECF p. 3.  He alleges his request was denied and that he did not seek further review of the request "because all procedures in the DOC are broken."  *Id.*

**C.     Exhaustion of Administrative Remedies (as demonstrated by Exhibits Submitted by the Parties)**

On December 28, 2009, Mr. Knight filed three grievances which Joseph Vinansky, the Grievance Coordinator at SCI-Waymart, consolidated under one grievance number, 255661.[4]  *See* Doc. 30-1 at CM/ECF p. 4, Vinansky Decl. at ¶ 13.  Grievance Coordinator Vinansky noted that "these three grievances all related

---

[4]  The Court notes that Defendants have submitted four (4), not three (3), grievances were consolidated by Mr. Vinansky under grievance number 255661.  *See* Doc. 30-1 at CM/ECF pp. 22-25.  For ease of reference the Court will refer to individual parts of the consolidate grievance 255661 as 255661A, 255661B, 255661C, and 255661D.  *See* Doc. 30-1 at CM/ECF pp. 22-25.

to the December 29, 2008 incidents for which Knight received misconducts." *Id.*

Grievance 255661A states that Mr. Knight was "openly shown insubornation (sic) &

threats by C/O Lowry" who sought to protect a snitch.  Plaintiff stated he no longer

felt safe at the facility.  *See* Doc. 30-1 at CM/ECF p. 22, Grev. 2255661A.

Grievance 255661B, *Id.* at CM/ECF p. 23, complains that officers on the 6-2 shift

were having inappropriate physical contact with inmates.  Plaintiff also complained

that he was physically assaulted an inmate "snitch" that CO Lowry was protecting.

*Id.*  In the third of the collective 255661 grievances Mr. Knights seeks a transfer to

SCI-Rockview after complaining he was not receiving proper mental health

treatment from his present treatment team.  *See Id.* at CM/ECF p. 24, Grev.

2255661C.  The fourth grievance included in the 255661 packet relates to staff

refusing to give him his heart medication when he experienced chest pain.  *Id.* at

CM/ECF p. 25, Grev. 255661D.  On December 31, 2008, Grievance Coordinator

Joseph Vinansky, returned the grievances without addressing them, because

> the issues [Mr. Knight] addressed are directly related to a
> series of incidents that occurred on December 29, 2008.
> On this date, [Plaintiff] threatened other inmates and
> assaulted staff ... [Mr. Knight] also [was] issued
> misconducts for [his] actions. [He] will have the
> opportunity to present [his] case before a Department of
> Corrections Hearing Examiner.  If [he} disagree[s] with
> the Hearing Examiner's decision, [he has] the option to
> file an appeal through SCI-Waymart's Program Review
> Committee.

*Id.* at CM/ECF pp. 26-27.

On December 29, 2008, Mr. Knight was issued three misconducts.  *See* Doc.

30-3.  The first, misconduct A778526, was issued by CO Lowry for assault,

threatening another person, using abusive, obscene or inappropriate language, and failure to obey an order.  At a January 2, 2009, misconduct hearing, Mr. Knight was found guilty of assault, threatening another person, and failure to obey an order.  *Id*. at CM/ECF pp.4-5.  The second misconduct, A332550, was issued by CO Leval for events that occurred in the "hallway" and "tie down room".  *Id*. at CM/ECF p. 6.  CO Leval charged Mr. Knight with assault, threatening another person, using abusive, obscene or inappropriate language, and destroying, altering, tampering with or damaging property.  *Id*.  His misconduct hearing was held January 2, 2009, and he was found guilty of assault, and destroying, altering, tampering with or damaging property.  *Id*. at CM/ECF p. 7.   The third and final misconduct issued to Mr. Knight that day was issued by CO Shiffer several hours after the first two.  *Id*. at CM/ECF p. 8 and p. 11.  In misconduct B091420, Mr. Knight was charged with threatening another person, using abusive, obscene or inappropriate language, possession of contraband, lying to an employee and failure to report the presence of contraband.  *Id*.  This misconduct was issued after the search team's search of Mr. Knight's cell and property yielded property and letters belonging to other inmates in his possession.  *Id*.  Plaintiff received his misconduct hearing on January 2, 2009, in conjunction with his other misconduct hearings.  He was found guilty of all charges relating to the third misconduct.  *Id*. at CM/ECF p. 10.  Notably, Mr. Knight "did not wish to enter a plea" at each misconduct hearing, rather he pled "no contest" to all charges.  *Id*. at CM/ECF pp. 5, 7, and 9.

While at SCI-Rockview, Mr. Knight filed 3 new grievances and misconduct hearing appeals challenging the results of all 3 misconduct hearings. *See* Doc. 30-1 at CM/ECF pp. 28-34. All documents were dated January 10, 2009. *Id.* at CM/ECF pp. 28-33. The first new grievance contests Mr. Vinansky's consolidation of his various December 28, 2008, grievances under one grievance number, 255661. *Id.* at CM/ECF p. 28. He states in this grievance that he "waited to file this instant grievance because [he] was in fear for [his] life at SCI Waymart." *Id.* The next grievance relates to his January 6, 2009, discovery of missing legal property. *Id.* at CM/ECF p. 29. The third grievance relates to the December 29, 2008, assault by SCI-Waymart corrections officers and was filed by Mr. Knight "to preserve such for 1983 actions". *Id.* at CM/ECF p. 30. He notes that he "waited to file this grievance because C/O's already tried to kill [him] & [he] was in fear for [his] life until this time & date that I'm housed in Rockview's MHU." *Id.* All of these documents were received by Jeffrey Rackovan, SCI-Rockview's Superintendent Assistant.[5] *Id.* at CM/ECF p. 34. On February 11, 2009, Mr. Rackovan forwarded the 6 pages of grievances and misconduct appeals to Mr. Knight and advised him that they must be sent by him to SCI-Waymart. *Id.* On March 4, 2011, Superintendent of SCI-Waymart, Joseph Nish, upheld the initial grievance decision relating to grievance 255661 and noted that the appeal was untimely. *Id.* at CM/ECF p. 35. There is no record of Mr. Knight appealing Superintendent Nish's decision to the Secretary's Office of Inmate Grievances and Appeals. Doc. 30-1 at CM/ECF p. 35, Vanansky

---

[5] The record is not clear as to the date of Mr. Knight's transfer from SCI-Waymart to SCI-Rockview.

Decl. at ¶ 17.  Likewise, Mr. Knight did not appeal any of his misconduct appeals to

final review.  Doc. 30-4 at CM/ECF p. 2, Lewis Decl. at ¶ 12.


III.    **Discussion**

   A.    **Mr. Knight May Not Maintain Claims for Damages
          Against Prison Officials in their Official Capacities.**

       The Eleventh Amendment bars all suits against a state and its agencies in

federal court that seek monetary damages.  *See Pennhurst v. Halderman,* 465 U.S.

89, 99-100, 104 S.Ct. 900, 907, 79 L.Ed.2d 67 (1984)*; A.W. v. Jersey City Public

Schools*, 341 F.3d 234, 238 (3d Cir. 2003).  Likewise, suits brought against state

officials acting in their official capacities are to be treated as suits against the

employing government agency, and as such, are also barred by the Eleventh

Amendment*.  See Hafer v. Melo*, 502 U.S. 21, 25-27, 112 S.Ct. 358, 361-62, 116

L.Ed.2d 301 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71, 109

S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989).  Pennsylvania has expressly withheld

consent and has not waived its Eleventh Amendment immunity.  *See* 42 PA. CONS.

STAT. ANN. § 8521-22.  However, claims for prospective injunctive relief to end an

ongoing violation of federal law against state officials in their official capacities are

not precluded by the Eleventh Amendment.  *See Iles v de Jongh*, 638 F.3d 169, 177

(3d Cir. 2011).  Furthermore, state officials sued in their *individual* capacities are

"persons" within the meaning of Section 1983.  *See Hafer*, 502 U.S. at 31, 112 S.Ct.

at 364-65.  Thus the Eleventh Amendment does not bar suits for monetary damages

brought under Section 1983 against state officials in their individual capacities.  *Id*.

Accordingly, to the extent Mr. Knight is suing the Defendants in their official capacities for monetary damages, these claims are subject to dismissal with prejudice.  This finding, however, does not preclude Mr. Knight's claim for prospective injunctive relief against the Defendants in their official capacities or his claim for monetary damages against the Defendants in their personal capacities.

### 2.      Lack of Personal Involvement of Superintendent Nish

A Section 1983 claim cannot be premised on a theory of *respondeat superior* and that in order to establish liability for deprivation of a constitutional right, a party must show personal involvement by each defendant.  *Iqbal*, 556 U.S. ___, 129 S.Ct. at 1948; *Santiago v. Warminster Tp.*, 629 F.3d 121, 130 (3d Cir. 2010).   "It is uncontested that a government official is liable only for his or her own conduct and accordingly must have had some sort of personal involvement in the alleged unconstitutional conduct."  *Argueta v. U.S. I.C.E.*, 643 F.3d 60, 71-72 (3d Cir. 2011). This personal involvement can be shown where a defendant personally directs the wrongs, or has actual knowledge of the wrongs and acquiesces in them.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207(3d Cir. 1988); *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572, 586 (3d Cir.2004) (noting that "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations").  A defendant "cannot be held responsible for a constitutional violation which he or she

neither participated in nor approved." *C.H. e rel. Z.H. v. Oliva*, 226 F.3d 198, 201-202 (3d Cir. 2000).

Defendants contend that as Mr. Knight failed to mention Superintendent Nish in the Complaint (Doc. 1) or his supplement (Doc.11) and therefore, he is entitled to dismissal from the action.  Doc. 30, Defs.' Mot. to Dismiss Brf. at CM/ECF pp. 9-10. Mr. Knight counters that "Superintendent Nish is forcefully in charge of all operations at the facility (SCI Waymart), and is also forcefully responsable (sic) for all subordnants (sic) that operate as employee's within the facility for proper and legal operation of the facility on a daily basis ..." and that "Nish clearly failed to control his subordnants (sic)" and that "he is the Supreme controller and facility manager." Doc. 32, Pl.'s Opp'n Brf. at CM/ECF pp. 19-20.  Mr. Knight has failed to plead that Superintendent Nish was personally involved in the alleged constitutional violations, by his own individual actions.  Mr. Knight clearly names Superintendent Nish as a defendant based on his supervisory role as the facility manager.  Accordingly, in the absence of any such allegations against Superintendent Nish, defendants' motion to dismiss as to this Defendant will be granted.


     **3.**    **Mr. Knight's Alleged Failure to Exhaust his Administrative Remedies.**

Pursuant to the Prison Litigation Reform Act (PLRA), before a prisoner may bring a civil rights action pursuant to 42 U.S.C. § 1983, or any other federal law, he must exhaust all available administrative remedies.  *See* 42 U.S.C. § 1997e; *Porter v. Nussle,* 534 U.S. 516, 524, 122 S.C. 983, 988, 152 L.Ed.2d 12 (2002).  "[T]here is

no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 212, 127 S.C. 910, 918-19, 166 L.Ed.2d 798 (2007).  The exhaustion requirement of the PLRA is one of "proper exhaustion."  *Woodford v. Ngo*, 548 U.S. 81, 84, 126 S.C. 2378, 2383, 165 L.Ed.2d 368 (2006).  This means that the prisoner plaintiff must have completed "the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court."  *Id.*  Additionally, the PLRA "completely precludes a futility exception to its mandatory exhaustion requirement."  *Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000).

A prisoner, however, need not exhaust every administrative remedy, only those which are available to him.  *Camp v. Brennan*, 219 F.3d 279, 281 (3d Cir. 2000); *accord Brown v. Croak*, 312 F.3d 109, 112-113 (3d Cir. 2002).  "A grievance procedure is not available even if one exists on paper if the defendant prison officials somehow prevent a prisoner from using it."  *Mitchell v. Horn*, 318 F.3d 523, 529 (3d Cir. 2003).

A prisoner is not required to allege that administrative remedies have been exhausted.  *Ray v. Kertes*, 285 F.3d 287 (3d Cir. 2002).  Failure to exhaust available administrative remedies is an affirmative defense.  *Id.*  As such, it must be pleaded and proven by the Defendant.  *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002).  In *Ray*, the Third Circuit Court of Appeals held that while exhaustion is an affirmative defense, it may be raised in a motion to dismiss.  *See Ray*, 85 F.3d at 295, n. 8.

Within the Pennsylvania Department of Corrections, there are several different administrative remedy processes available to inmates which collectively provide an inmate a route to challenge every aspect of their confinement.  Each administrative remedy process is designed to address specific issues which may arise within the prison.  One administrative remedy may not be substituted for another.  Each policy clearly spells out any mandates, or exceptions, with respect to issues that must be addressed , or conversely, excluded from consideration, under the policy.

DC–ADM 801, the Inmate Discipline Policy, provides an administrative procedure for inmates found guilty of a misconduct to challenge the finding. *See* Doc. 30-4 at CM/ECF pp. 4-42.  DC-ADM 801 offers a three-phase review procedure consisting of a first level appeal to the Program Review Committee (PRC) to be filed within 15 days of the misconduct hearing.  *Id*. at CM/ECF p. 22.  Within 7 days of receipt of the PRC's decision, the inmate may file a second level appeal to the Superintendent/Facility Manager who shall respond to the appeal within seven working days.  *Id*. at CM/ECF p. 23.  Finally, within 7 days of receipt of the Facility Manager's decision, the inmate's final level of appeal is to the Office of Chief Counsel.  *Id*. at CM/ECF p. 24.  The Chief Hearing Examiner's Office shall respond to the misconduct appeal to final review within seven working days.  *Id*.

DC-ADM 804, is the Inmate Grievance System Policy, and is used to address issue related to an inmate's conditions of confinement claims other than those related to inmate discipline/misconducts (DC-ADM 801) and/or administrative

custody procedures (DC-ADM 802).  *See* Doc. 30-1 at CM/ECF pp. 6-21.  The

grievance policy consists of three separate stages.  First, the prisoner is required to

timely submit a written grievance for review by the facility manager or the regional

grievance coordinator within fifteen days of the incident, who responds in writing

within ten business days.  Second, the inmate must timely submit a written appeal to

intermediate review within ten working days, and again the inmate receives a written

response within ten working days.  Finally, the inmate must submit a timely appeal

to the Central Office Review Committee within fifteen working days, and the inmate

will receive a final determination in writing within thirty days.  *See Booth v. Churner*,

*206 F.3d 289, 293 n. 2 (3d Cir. 1997), aff'd.* 532 U.S. 731, 121 S.Ct. 1819, 149

L.Ed.2d 958 (2001).

        The Defendants argue that Mr. Knight has failed to exhaust his administrative

remedies as to his claims of excessive use of force by corrections officers or their

alleged deliberate indifference to his medical needs.  Doc. 30, Defs.' Mot. to Dismiss

Brf. at CM/ECF pp. 10-14.  Based on the indisputably authentic document presented

by the parties on the issue of Mr. Knight's exhaustion of administrative remedies, the

Court will dismiss Mr. Knight's Eighth Amendment claims of deliberate indifference

against the Defendants as he failed to administratively exhaust that issue prior to

filing this suit.  According to a grievance form submitted by Mr. Knight, he "waited to

file this grievance because C/O's already tried to kill me and I was in fear for my life

until this time & date that I'm housed in Rockview's MHU."  Doc. 30-1 at CM/ECF p.

30.  The date of that grievance is January 10, 2009, and only asserts that he was

assaulted on December 29, 2008.  There is absolutely no mention that he was

denied medical care by any corrections official or member of the medical department in that grievance.  Although this Court certainly does not condone any delay in providing prisoners with necessary medical treatment, prisoners are required to follow, and exhaust, the administrative procedures provided to them. Thus, defendants have affirmatively carried their burden to demonstrate that Mr. Knight did not exhaust his claims that defendants were deliberatly indifferent to his serious medical needs as there is no mention of the medical issues in his grievance concerning the December 29, 2008, assault.  In accordance with the PLRA, failure to exhaust administrative remedies necessarily requires that his Eighth Amendment claims of deliberate indifference be dismissed.

        The same is not true with respect to Mr. Knight's excessive use of force claim.  Defendants primarily rely on the declaration of Joseph Vinansky to support their assertion that Mr. Knight failed to properly exhaust his administrative remedies with respect to this claim.  The Court, however, after examination of the exhibits submitted in support of Mr. Vinansky's declaration is perplexed as to how they *support* their assertion of non-exhaustion.  Mr. Knight asserts he was assaulted on December 29, 2008.  The grievances which Grievance Coordinator Vinansky consolidated and rejected as being related to misconducts Plaintiff received on December 29, 2008, were all submitted on December 28, 2008, a day *before* the assault and resulting misconducts.  Furthermore, upon reading the grievances consolidated under 25561, it is clear that they do not make mention of Mr. Knight being assaulted by any corrections officer while housed at SCI-Waymart.  *See* Doc. 30-1 at CM/ECF pp. 22-25.  How Mr. Vinansky construed and rejected the

grievances because they attempted "to raise issues that were subject of" the misconducts Plaintiff received on December 29, 2008, is unclear at best.  The Court finds no relevance of the exhaustion of the grievances consolidated under 255661 and Mr. Knight's exhaustion of the claims presented in this action.  The fact that the Facility Manager denied the appeal of grievance 255661 as untimely, or that Mr. Knight did not appeal the grievance to final review is equally irrelevant as they are unrelated to the issues relating to the assault.  Thus, the defendants have failed to carry their burden to demonstrate Mr. Knight's failure to exhaust his administrative remedies with regards to the excessive use of force claim based on the procedural history of grievance 255661.

Next, Defendants assert that to the extent Mr. Knight raises the excessive use of force claim in his challenge of his two related assault misconducts he received on December 29, 2008, (Doc. 30-3 at CM/ECF p. 4 and 6), he failed to appeal these misconducts "to [the] PRC."  Defendants have submitted documents demonstrating that Mr. Knight did appeal both assault misconducts.  *See* Doc. 30-1 at CM/ECF pp. 32-33.  Defendants submissions in support of their motion demonstrate that they received these documents,  *see* Doc. 30-1 at CM/ECF p.4, Vinansky Decl. at ¶ 15, but yet defendants do not affirmatively demonstrate that the misconduct appeals were ever processed by the facility manager.  *See* Doc. 30-1, at CM/ECF p. 35.  Thus, there are unresolved issues before the Court as to the availability of the DC-ADM 804 administrative remedy process for Mr. Knight to comply with the PLRA's exhaustion requirement.

Our inquiry does not stop here as both Defendants and Mr. Knight have submitted a grievance dated January 10, 2009, which clearly raises the excessive use of force claim stemming for the events at SCI-Waymart on December 29, 2008. Doc. 30-1 at CM/ECF p. 30.[6]  Defendants acknowledge receipt of this document from Mr. Knight but erroneously identified it as "his appeal of grievance 255661". Doc. 30-1 at CM/ECF p. 4 and p. 30.  However, this document does not reference grievance 25561, nor does it relate to any of the issues raised in that consolidated grievance.  Thus, this grievance was received, but not processed by the DOC. Although Defendants suggest that the grievance was not received until March 4, 2009, by SCI-Waymart officials and thus may be untimely under DC-ADM 801 and/or DC-ADM 804, this assertion alone does not prove Mr. Knight is responsible for failing to exhaust his administrative remedies.  Both administrative remedy processes do not automatically reject a grievance or appeal simply because it is untimely.  Both DC-ADM 801, *see* Doc. 30-4 at CM/ECF p. 23, and DC-ADM 804, *see* Doc. 30-1 at CM/ECF p. 12, suggest extensions of time for filing are permitted in some circumstances.  However, as there is no evidence that Mr. Knight's January 10, 2009, grievance (Doc. 30-1 at CM/ECF p. 29) was ever processed and/or rejected as either a grievance or a misconduct, it is unknown whether Plaintiff could have obtained an enlargement of time to properly exhaust his excessive use of force

---

[6]  The Court notes that 12 days elapsed between December 29, 2008 and January 10, 2009.  Thus, assuming for the sake of this argument only, if this document was properly filed pursuant to DC-ADM 804, with the Facility Grievance Coordinator at the facility where the grievance occurred, it was timely filed within the 15 working days after the event upon which the claim is based.  *See* Doc. 30-1 at CM/ECF p. 11.

claim.

If the actions of prison officials directly caused, or contributed to, Mr. Knight's procedural default of his grievance (Doc. 30-1 at CM/ECF p. 29), he cannot be held to strict compliance with the exhaustion requirement.  *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000).  In this case, it is undisputed that Mr. Knight's grievance dated January 10, 2009, was never processed by SCI-Waymart officials.  It was erroneously considered an appeal of grievance 255661 which related to events occurring prior to December 29, 2008.  Consequently, defendants have not met their burden p roving the affirmative defense of failure to exhaust administrative remedies with respect to the excessive use of force claim.  Accordingly, Defendants' motion to dismiss Plaintiff's Eighth Amendment excessive use of force claim will be denied.

**B.    Motion for Enlargement of Time to File Address of Sam Herchik.**

More than 7 months after filing the Complaint, the Court issued an order directing Mr. Knight to identify his John Doe defendants and provide their addresses, and that of CO Sam Herchik, for the purpose of effecting original service upon them.  *See* Doc. 23.  Mr. Knight was given 20 days to provide this information to the Court or face the dismissal of these defendants pursuant to Fed. R. Civ. P. 4(m).  *Id*.  Approximately 14 days later, on July 28, 2011, Mr. Knight filed a  Motion for Enlargement of Time to provide the Court with the address of CO Herchik, as well as the identity of the 4 John Doe defendants.  *See* Doc. 28, Mot. for Extension of Time.  In his motion he identifies two John Doe defendants as CO Freechen and

-21-

CO Leval but fails to provide their address, or that of CO Herchik.  In support of his request for an enlargement of time Mr. Knight notes that he has filed a motion for appointment of counsel, and that if granted, counsel would be able locate the necessary information.  *Id*.  However, the Court denied Mr. Knight's third motion for appointment of counsel on July 15, 2011.  *See* Doc. 25.  Mr. Knight would have received notice of the Court's denial of his request counsel shortly after he filed his Motion fo Enlargement of Time to provide the identification and residency information on the unserved defendants.

When a complaint has not been served upon a defendant within 120 days after the complaint is filed, Fed. R. Civ. P. 4(m), requires the court, after giving Plaintiff the appropriate notice, to dismiss the action against that defendants.[7] Under such circumstances, dismissal of the complaint for failure to comply with Rule 4(m) is appropriate.

The Court's order of July 20, 2011, gave Mr. Knight adequate notice of our intention to dismiss the claims against the John Doe Defendants and CO Herchik on the basis of lack of service under Rule 4(m) and an opportunity to respond. Although in his motion for an extension of time Mr. Knight identifies 2 of his 4 John Doe Defendants, he does not provide their addresses (or that of CO Herchik), or a reason for his failure to name CO Freechan and CO Leval within the 120 day time frame.  Although an additional 7 months have passed since the filing of his motion for enlargement to supply this information to the Court, he has not done so.

---

[7]  If, however, the Plaintiff shows good cause for the failure, the time for making service may be extended for an appropriate period.

However, perhaps Mr. Knight was awaiting this Court's resolution of his motion for enlargement before providing such information to the Court.  Therefore, out of an abundance of caution for the claims of this *pro se* litigant, the Court will direct Mr. Knight to provide the names and address of all unserved defendants, and show good cause why CO Freechan and CO Leval were not named within 120 days of his filing of the complaint.  No further enlargements will be granted with respect to the unidentified and unserved defendants.

An appropriate Order will follow.


**/s/ A. Richard Caputo**
**A. RICHARD CAPUTO**
**United States District Judge**

**Date: March  7th  , 2012**

-23-

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LAWRENCE H. KNIGHT, II,** | : | |
| | : | |
| **Plaintiff** | : | |
| | : | **CIVIL NO. 3:CV-10-2168** |
| **v.** | : | |
| | : | **(Judge Caputo)** |
| **CO LOWRY, *et al.*,** | : | |
| | : | |
| **Defendants** | : | |

## O R D E R

**AND NOW**, this ___7th___ day of **March, 2012**, it is ordered that:

1.  The defendants' motion to dismiss (Doc. 22) is granted in part and denied in part.

2.  The claims against the defendants in their official capacities are hereby dismissed as barred by the doctrine of sovereign immunity.

3.  All claims against Superintendent Nish are dismissed due to Mr. Knight's failure to state a claim against him.

4.  Mr. Knight's Eighth Amendment claim of deliberate indifference is dismissed with prejudice due to his failure to exhaust his available administrative remedies.

5.  The sole remaining claim is Mr. Knight's Eighth Amendment claim of excessive use of force against CO Black and CO Lowry.

6.  CO Black and CO Lowry are granted twenty-one (21) days from the date of this Order to file an Answer to the Complaint.

7.    Mr. Knight's Motion for Extension of Time
      (Doc. 28) is granted.

8.    Within ten (10) days from the date of this
      Order Mr. Knight shall provide the Court
      with the sufficient information for the
      Marshal to effect service on CO Freechan,
      CO Leval and CO Herchik.

9.    Plaintiff's failure to comply with ¶ 8 of this
      Order will result in the dismissal of this
      action against the unserved defendants
      (Freechan, Leval, Herchik and Does)
      pursuant to Fed. R. Civ. P. 4(m).


                    **/s/ A. Richard Caputo**
                    **A. RICHARD CAPUTO**
                    **United States District Judge**